## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| **ERIC PLANT, INDIVIDUALLY, AND** | § | |
| **ERIC PLANT, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **3:18-cv-00574-MOC-DSC** |
| | § | |
| **RAPID EPS LIMITED, DAVID BRINE,** | § | |
| **AND MICHAEL H. WHITTAKER,** | § | |
| | § | |
| | § | |
| **Defendants,** | § | |

## <u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Craig M. Warner
North Carolina Bar No. 32983
Attorney for Defendants Rapid EPS Limited,
David Brine, & Michael H. Whittaker
North Carolina Bar No. 32983
2323 Ross Avenue, Suite 1900
Dallas, Texas  75201-2720
Telephone:  (214) 740-1400
Telecopy:  (214) 740-5743
cwarner@bellnunnally.com

**ATTORNEY FOR DEFENDANTS
RAPID EPS LIMITED, DAVID BRINE, &
MICHAEL H. WHITTAKER**

# TABLE OF CONTENTS

## Contents

ARGUMENT ....................................................................................................................... 5

   I.    THE AGREEMENT'S FORUM-SELECTION CLAUSE MANDATES DISMISSAL
ON THE BASIS OF FORUM *NON CONVENIENS* ......................................................... 5

      A.   The Forum-Selection Clause is Mandatory. ................................................. 6

      B.   The Forum-Selection Clause is Valid and Must Be Enforced. ..................... 7

      C.   The Public Interest Factors Do Not Weigh Against Transfer. ...................... 9

      D.   Plaintiff Eric Plant is Bound by The Agreement. ....................................... 10

      E.   All Of The Claims are Covered by The Agreement .................................... 11

   II.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS ... 12

      A.   Mr. Brine and Mr. Whittaker ..................................................................... 13

      B.   Rapid EPS .................................................................................................. 15

CONCLUSION ................................................................................................................. 20

Case 3:18-cv-00574-MOC-DSC   Document 2-1   Filed 10/29/18   Page 2 of 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AC Controls Co., Inc. v. Pomeroy Computer Res., Inc.*,
    284 F.Supp.2d 357 (W.D.N.C. 2003) ....................................................................8

*Albemarle Corp. v. AstraZeneca UK Ltd.*,
    628 F.3d 643 (4th Cir. 2010) ..............................................................................6

*Allen v. Lloyd's of London*,
    94 F.3d 923 (4th Cir. 1996) ............................................................................7, 8

*Asahi Metal Ind. Co. v. Superior Court*,
    480 U.S. 102, 107 S.Ct. 1026 (1987) .............................................................18, 19

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
    571 U.S. 49, 134 S.Ct. 568 (2013) .............................................................5, 9, 11

*BAE Systems Tech. v. Republic of Korea's Defense*,
    884 F. 3d 463 (4th Cir. 2018) ..............................................................................7

*Belfiore v. Summit Fed. Credit Union*,
    452 F. Supp. 2d 629 (D. Md. 2006) ....................................................................10

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ..........................................8

*Christian Sci. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*,
    259 F.2d 209 (4th Cir. 2001) ............................................................................12

*Consulting Engineers Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ...................................................................13, 16, 18

*Davis Media Grp., Inc. v. Best W. Int'l, Inc.*,
    302 F. Supp. 2d 464 (D. Md. 2004) ....................................................................6

*Foster v. Arletty 3 S.A.R.L.*,
    278 F.3d 409 (4th Cir. 2002) ............................................................................19

*Hugel v. Corp. of Lloyd's*,
    999 F.2d 206 (7th Cir. 1993) ............................................................................10

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ........................................................................................18

*Kochert v. Adagen Medical Intern., Inc.*,
    491 F.3d 674 (7th Cir. 2007) ............................................................................11

*Lambert v. Kysar*,
   983 F.2d 1110 (1st Cir. 1993)..................................................................11

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)....................................7

*NC Contracting, Inc. v. Munlake Contractors, Inc.*,
   No. 5:11-CV-766-FL, 2012 WL 5303295 (E.D.N.C. Oct. 25, 2012)..................11

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,
   416 F.3d 290 (4th Cir. 2005)....................................................................12

*Roby v. Corporation of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993)....................................................................12

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)...............................7

*Smith v. Dade Behring Holdings, Inc.*,
   2007 WL 152119 (W.D.N.C. Jan. 16, 2007)..............................................13

*Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG*,
   26 F. Supp. 3d 496 (M.D.N.C. 2014).......................................................6, 9

*Tutterrow v, Leach*,
   421 S.E.2d 816 (N.C. Ct. App. 1992).........................................14, 15, 16, 18

*Unspam Techs, Inc. v. Chernuk*,
   716 F.3d 322 (4th Cir. 2013)....................................................................13

*Wilmar Racing, Inc. v. Stewart*,
   541 S.W. 2d 733 (N.C. Ct. App. 2001)......................................................16

*Wright v. Zacky Sons Poultry, LLC*,
   105 F. Supp. 3d 531 (M.D.N.C. 2015)...........................................15, 16, 17, 18

## Statutes

28 U.S.C. § 1404(a).......................................................................................3, 5

N.C. Gen. Stat. § 22B-3...............................................................................9

## Other Authorities

Fed. R. Civ. P. 12(b)(2)................................................................12, 15, 19, 20

Local Civil Rule 7.2.......................................................................................3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| **ERIC PLANT, INDIVIDUALLY, AND** | § | |
| **ERIC PLANT, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **3:18-cv-00574-MOC-DSC** |
| | § | |
| **RAPID EPS LIMITED, DAVID BRINE,** | § | |
| **AND MICHAEL H. WHITTAKER,** | § | |
| | § | |
| | § | |
| **Defendants,** | § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Come now Defendants Rapid EPS Limited ("Rapid EPS"), David Brine, and Michael J. Whittaker (together, "Defendants"), pursuant to the Federal Rules of Civil Procedure, 28 U.S.C. § 1404(a), and Local Civil Rule 7.2, by and through the undersigned counsel, and hereby respectfully submit this *Brief in Support of Defendants' Motion to Dismiss*, filed contemporaneously in support of *Defendants' Motion to Dismiss*.

## NATURE OF THE CASE

Plaintiffs Eric Plant, LLC ("Eric Plant, LLC") and Eric Plant ("Mr. Plant") (together, "Plaintiffs") commenced this action on September 26, 2018 in Mecklenburg County Superior Court by filing a Civil Summons ("Summons") and Complaint, Civil Action No. 18-CVS-18637, ("Complaint"). Defendants were purportedly served with the Summons and Complaint on or about October 1, 2018. On October 23, 2018, Defendants removed the case to this Court.

# STATEMENT OF FACTS

Rapid EPS manufactures and sells edge protection safety systems throughout the world. (ECF No. 1-2 at 10, Complaint ¶ 9). Since 2009, Rapid EPS has engaged Mr. Plant to assist in the development of its fall prevention system business and to expand its scope and customer base throughout North and South America. (*Id.* at ¶¶ 12-13). In connection with his engagement by Rapid EPS, Mr. Plant formed the entity Eric Plant, LLC. (*Id.* at ¶ 15). In order to memorialize their relationship, Eric Plant LLC entered into an Agency Agreement with Rapid EPS on October 20, 2016 (the "Agreement,") (*Id.* at ¶ 19). The Agreement was signed by Dave Brine on behalf of Rapid EPS and by Jonathan Plant and Mr. Plant on behalf of Eric Plant, LLC. (ECF No. 1-2 at 38, Ex. A to Complaint, p. 20). Section 25 of the Agreement, entitled "Governing law," states "This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of England and Wales." (ECF No. 1-2 at 34, Ex. A to Complaint, § 25). Section 26 of the Agreement, entitled "Jurisdiction," states "Each party hereby irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this agreement or its subject matter or formation (including non-contractual disputes or claims)." (ECF No. 1-2 at 34, Ex. A to Complaint, § 26).

# QUESTIONS PRESENTED

I.  Whether Plaintiffs' Complaint should be dismissed on the basis of forum *non conveniens* given that the Agreement between Eric Plant, LLC and Rapid EPS contained a mandatory forum-selection clause specifying that the courts of England shall have exclusive jurisdiction.

II. Whether Plaintiffs' Complaint should be dismissed as to Mr. Brine and Mr. Whittaker on the basis that this Court lacks personal jurisdiction over individuals with minimal contacts in North Carolina and whose only alleged wrongful acts were done in their

corporate capacity as officers of Rapid EPS.

III. Whether Plaintiffs' Complaint should be dismissed as to Rapid EPS on the basis that this Court lacks personal jurisdiction over a corporation that has neither conducted business operations in North Carolina nor targeted the North Carolina market.

## ARGUMENT

### I. THE AGREEMENT'S FORUM-SELECTION CLAUSE MANDATES DISMISSAL ON THE BASIS OF FORUM *NON CONVENIENS*

When parties to a litigation have contractually chosen a nonfederal forum, the correct mechanism to enforce the forum-selection clause is a motion to dismiss for forum *non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59, 134 S.Ct. 568, 580 (2013). When a contract contains a mandatory forum-selection clause, only an exceptional public-interest justification can displace the contractual choice of forum. *Id*. at 63. By filing in the wrong forum, the plaintiff is the party defying the forum-selection clause and is the party that bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id*. at 52.

Deciding a forum *non conveniens* motion under § 1404(a) ordinarily requires an evaluation of both the convenience of the parties and various public-interest considerations. *Id.* at 63. But where, as here, the case involves a forum-selection clause, the private interests drop out of the equation because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. The analysis is thus limited to public-interest factors. Because those factors are "rarely" strong enough to override the parties' preselected forum, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

As explained below, this case should be dismissed because the forum-selection clause in the Agreement is mandatory, valid, applicable to both Mr. Plant and Eric Plant, LLC, and covers all of the claims being asserted by Plaintiffs.

### A. The Forum-Selection Clause is Mandatory.

"[A] federal court interpreting a forum selection clause must apply federal law in doing so." *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010)). Forum-selection clauses can be either mandatory or permissive. *Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG*, 26 F. Supp. 3d 496, 505 (M.D.N.C. 2014). A mandatory forum-selection clause provides "the designated forum with exclusive jurisdiction over any disputes." *Id.*

Rapid EPS and Eric Plant, LLC entered into the Agreement to memorialize the agency relationship between the parties. (ECF No. 1-2 at 10, Complaint ¶ 19). The forum-selection clause in the Agreement reads as follows:

> Each party hereby irrevocably agrees that the courts of England shall have <u>exclusive jurisdiction</u> to settle any dispute or claim arising out of or in connection with this agreement or its subject matter or formation (including non-contractual disputes or claims).

(ECF No. 1-2 at 34, Ex. A to Complaint, § 26) (emphasis added). The use of the phrase "the courts of England *shall* have exclusive jurisdiction" leaves no doubt that the parties intended England to be the exclusive place of jurisdiction for Plaintiffs' lawsuit. Thus, there is little question that this clause is mandatory in nature. *See Turfworthy, LLC*, 26 F. Supp. 3d at 505–06; *Davis Media Grp., Inc. v. Best W. Int'l, Inc*., 302 F. Supp. 2d 464, 468 (D. Md. 2004). Accordingly, the forum-selection clause in Section 26 of the Agreement is mandatory and, if valid, must be enforced by this Court.

## B. The Forum-Selection Clause is Valid and Must Be Enforced.

Mandatory forum-selection clauses are presumptively valid and, as a general matter, courts enforce forum selection clauses unless it would be unreasonable to do so. *BAE Systems Tech. v. Republic of Korea's Defense*, 884 F. 3d 463, 470 (4th Cir. 2018) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *accord Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). The party opposing enforcement of the forum-selection clause bears the burden of showing that enforcement is unreasonable. *M/S Bremen*, 407 U.S. at 17 (noting that the party arguing that the forum-selection clause is inapplicable "should bear a heavy burden of proof"). To overcome this presumption, there must be a clear showing that the forum-selection clause is unreasonable because: (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state. *Allen,* 94 F.3d at 928.

### 1. The formation was not induced by fraud or overreaching

In order to show that the forum-selection clause is unreasonable based on fraud, Plaintiffs would need to show that inclusion of the forum-selection clause itself was the product of fraud or coercion. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Allen,* 94 F.3d at 928. Plaintiffs have not alleged fraud or coercion in the formation of the Agreement and Defendants are unaware of any such allegations. On the contrary, Eric Plant, LLC has alleged that "the Agreement remains in force pursuant to its terms." (ECF No. 1-2 at 12, Complaint ¶ 35). In other words, Plaintiffs are suing Defendants for the breach of the Agreement.

Plaintiffs cannot, at the same time, ask to ignore a portion of the Agreement by which they do not wish to abide:  the forum selection clause.

Moreover, formation of the subject forum-selection clauses was not induced by overreaching by Defendants.  Mr. Plant, who signed the Agreement on behalf of Eric Plant, LLC, had the opportunity to review and edit the Agreement prior to execution.  (*See* ECF No. 1-2 at 21, Ex. A to Complaint, p. 3) (handwritten edits initialed by both parties).  To the extent Mr. Plant, an individual, argues Rapid EPS was a sophisticated corporate entity, "disparities in bargaining position are legally insufficient to invalidate an otherwise reasonable forum selection clause." *AC Controls Co., Inc. v. Pomeroy Computer Res., Inc.,* 284 F.Supp.2d 357, 361 n. 4 (W.D.N.C. 2003) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593-94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).  Also, any allegation that Plaintiffs were unable, or failed, to negotiate concerning the forum-selection clauses does not establish "overreaching" by Rapid EPS.  *See Carnival Cruise,* 499 U.S. at 593-94 (holding a forum-selection clause included in an adhesion contract valid); *AC Controls,* 284 F.Supp.2d at 361. Finally, the choice of England as the exclusive forum was not unreasonable.  Mr. Brine and Mr. Whittaker are both citizens of England and Rapid EPS is a company incorporated and registered in England and Wales whose registered office is situated in Leeds, West Yorkshire, United Kingdom.  (ECF No. 1-2 at 9, Complaint ¶¶ 3-5).  There is no evidence that Rapid EPS designated England as the exclusive forum in an effort to prevent Plaintiffs from pursuing legitimate claims.  *See Carnival Cruise,* 499 U.S. at 593-94.

2. *Plaintiffs will not be deprived of their day in court or of a remedy*

United States courts have consistently found English tribunals to be neutral and just; thus, Plaintiffs would not be effectively "denied their day in court" were they forced to present their claims in front of an English tribunal.  *See Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.

1996) (agreeing with the district court on this factor). As the Fourth Circuit noted, British law prohibits fraud and misrepresentations (two of Plaintiffs' claims in the present case). *Id.* at 929. Furthermore, under British law, Plaintiffs can bring claims based on the tort of deceit, breach of contract, and breach of fiduciary duty, among others, and can obtain injunctive, declaratory, rescissionary, and restitutionary relief. *Id.*

### C. The Public Interest Factors Do Not Weigh Against Transfer.

As the Supreme Court has stated, rarely will the public interest factors "defeat a transfer motion." *Atl. Marine Constr. Co.*, 134 S. Ct. at 582. North Carolina has a strong public policy against forum-selection clauses. *See* N.C. Gen. Stat. § 22B-3 ("[A]ny provision in a contract entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable."). However, "the potentially persuasive value of § 22B-3, as an expression of North Carolina's policy concerning forum-selection clauses, is just one factor in this [C]ourt's analysis, which is governed by federal law, not state law." *See Turfworthy, LLC*, 26 F. Supp. 3d at 509. (citing *James C. Greene Co. v. Great Am. E & S Ins. Co.*, 321 F. Supp. 2d 717, 721 (E.D.N.C. 2004)).

North Carolina's interest in having localized controversies decided at home actually weighs in favor of transfer inasmuch as the principal place of business for the alleged wrong-doer, Rapid EPS, is located in England (as are Mr. Brine and Mr. Whittaker). Furthermore, Section 25 of the Agreement states that the Agreement and any dispute or claim arising out of or in connection with it shall be governed by and construed in accordance with the laws of England and Wales. (ECF No. 1-2 at 34, Ex. A to Complaint § 25). The preference of having this case adjudicated in the

forum that is much more at home with the laws of England and Wales also counsels in favor of transfer. Accordingly, the public interest factors do not weigh against transfer.

### D. Plaintiff Eric Plant is Bound by The Agreement.

Although Mr. Plant signed the Agreement, the Agreement was between Rapid EPS Ltd. and Eric Plant, LLC. (ECF No. 1-2 at 38, Ex. A to Complaint, p. 20). A forum selection clause will reach individuals who are not parties to the contract "so long as their alleged conduct is 'closely related' to the contract in question." *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 633 (D. Md. 2006) (citing *Manetti–Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)) (forum-selection clause applies to non-parties claims because "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies"). Courts throughout the United States have held that a non-party to a contract may nonetheless be bound by that contract's forum-selection clause if the non-party is so "closely related" to the dispute that it becomes foreseeable that it will be bound. *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993).

While Eric Plant was not a party to the Agreement in his individual capacity, he is, nevertheless, subject to the forum-selection clause because his ownership and control of Eric Plant, LLC is "closely related" to the terms of the Agreement. *See Belfiore*, 452 F. Supp. 2d at 633. Mr. Plant signed the Agreement and was the vehicle by which the Agreement would be performed. Thus, it was foreseeable that Mr. Plant would be bound by the forum selection clause. To the extent Mr. Plant asserts claims in the Complaint as an individual, those claims largely overlap with the claims of Eric Plant, LLC and do not preclude enforcement of the forum selection clause. *See Belfiore*, 452 F. Supp. 2d at 632 ("[P]leading alternate non-contractual theories is not alone enough

to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms.").

Mr. Plant's asserted claims are closely related, if not identical, to those of Eric Plant, LLC on whose behalf Mr. Plant signed the Agreement. By filing suit on the Agreement, Mr. Plant has accepted its terms, including the forum selection clause contained therein. Mr. Plant is attempting to benefit from the provisions of the Agreement and, thus, is also bound by the forum clause contained in the Agreement. If Plaintiffs are allowed to maintain the suit in this forum, then the mandates of *Atl. Marine Const. Co.* could be easily undermined by the clever attorney who joins a party who did not sign a contract containing a forum selection clause to the lawsuit for the sole purpose of voiding the forum selection clause in the Agreement. But the law disallows such gamesmanship. In the case at hand, it is foreseeable that all of Plaintiffs' claims would travel together and, thus, Eric Plant, LLC and Eric Plant are both bound by the forum selection clause.

### E. All Of The Claims are Covered by The Agreement

To determine the scope of the clause, courts look to the language of the contract to determine which causes of action are governed by the forum-selection clause. *NC Contracting, Inc. v. Munlake Contractors, Inc.*, No. 5:11-CV-766-FL, 2012 WL 5303295, at *6 (E.D.N.C. Oct. 25, 2012) (quoting *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)).

A forum selection clause is not limited to claims for breach of contract when the other claims made by the plaintiff relate to the plaintiff's contractual relationship with the defendant. *Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 679 (7th Cir. 2007). Stated another way, "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

In the present case, each of Plaintiffs' nine causes of action originate out of the relationship between Plaintiffs and Rapid EPS that was memorialized in the Agreement. (Complaint ¶¶ 33-94). Plaintiffs' First (Declaratory Judgment), Second (Commissions), Fourth (Breach of Contract), Fifth (Quantum Meruit), and Seventh (Conversion) Causes of Action specifically reference the Agreement and Rapid EPS's alleged failure to abide by it. Although Plaintiffs' Fifth Claim for Relief, plead in the alternative, for *quantum meruit* is a non-contractual claim, the Agreement's forum-selection clause applies to a claim for *quantum meruit*. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) ("We therefore reject ... the contention that only allegations of contractual violations fall within the scope of the clauses.").

Plaintiffs' Third (Wage and Hour Act), Sixth (Constructive Fraud), Eighth (Unfair and Deceptive Trade Practices), and Ninth (Punitive Damages) each arise out of Rapid EPS's alleged failure to perform acts it was otherwise required to perform under the Agreement. Although Plaintiffs fail to specifically reference the Agreement in laying out their causes of action under the Wage and Hour Act and for constructive fraud, unfair and deceptive trade practices, and punitive damages, for them to prevail on those claims, Rapid EPS would have had to have breached the Agreement. Therefore, all of the claims are based in part on Rapid EPS's alleged breach of the Agreement and fall within the scope of the forum selection clause of the Agreement.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that the Court has personal jurisdiction over a defendant by a preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). The Fourth Circuit has ruled that the North Carolina long-arm statute runs coextensive with the federal Due Process Clause, thereby creating a single inquiry whether a non-resident

defendant has sufficient "minimal contacts" with North Carolina that exercising jurisdiction over it does not offend "traditional notions of fair play and substantial justice." *Christian Sci. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259 F.2d 209, 215 (4th Cir. 2001). In applying that rule and deciding whether a federal court can assert specific personal jurisdiction over a defendant, the Fourth Circuit has developed a three-part test in which it considers: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). For specific jurisdiction to be in accordance with due process, a court must find that all three factors of the test are satisfied as to each defendant. *Id.* at 278-79.

Neither Mr. Brine and Mr. Whittaker in their individual capacities, nor Rapid EPS as an entity, have sufficient minimum contacts with North Carolina arising from the facts at issue in this dispute to anchor personal jurisdiction in the courts of North Carolina. Because this Court therefore lacks personal jurisdiction over the Defendants, this case should be dismissed.

### A. Mr. Brine and Mr. Whittaker

"Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." *Smith v. Dade Behring Holdings, Inc.*, 2007 WL 152119, *3 (W.D.N.C. Jan. 16, 2007) (citation omitted). Rapid EPS maintains that it has not purposefully availed itself of the privilege of conducting activities in North Carolina. But even were that not so, the act of owning a company that does business in North Carolina, without more, does not establish that the owners have subjected themselves to the sovereignty of North Carolina in their individual capacities. *See Unspam Techs, Inc. v. Chernuk*,

716 F.3d 322, 328 (4th Cir. 2013). Neither Mr. Brine nor Mr. Whittaker have purposefully availed themselves of the privilege of conducting activities in North Carolina, and the plaintiffs' claims cannot be plausibly said to have arisen from either individual defendant's activities in North Carolina.

Mr. Plant and Mr. Brine first met at a trade show in Dubai. (Brine Decl. at ¶6, attached hereto and incorporated herein as Ex. A). Mr. Brine has visited North Carolina only three times in the past eight years. (*Id.* at ¶6). Mr. Whittaker has never visited North Carolina. (*Id.* at ¶6). Mr. Whittaker has only met Mr. Plant twice and both times the meetings occurred in the United Kingdom. (*Id.* at ¶6).

The Agreement contains no provision requiring Mr. Brine and Mr. Whittaker, individually, to perform services within North Carolina. (*See* ECF No. 1-2 at 19-38, Ex. A to Complaint). Nor did the Agreement require or contemplate that Plaintiffs would perform services or market products within North Carolina. (Brine Decl. at ¶¶5, 8). Mr. Whittaker did not sign the Agreement. (*Id.* at 20). Mr. Whittaker was not involved in its negotiation. (Brine Decl. at ¶7). While Mr. Brine did sign the Agreement, he did so only on behalf of Rapid EPS. (ECF No. 1-2 at 38, Ex. A to Complaint at 20; Brine Decl. at ¶7). Rapid EPS is the only party required to remit payments to Eric Plant, LLC. (See *id.*). Furthermore, the Agreement includes a forum selection clause and choice-of-law clause pointing to England. (See *id.*). Rapid EPS never delivered any products to North Carolina. (Brine Decl. at ¶¶5, 8). These facts taken together make it clear that Mr. Whittaker had no contacts with North Carolina and Mr. Brine merely executed, on behalf of Rapid EPS, a contract with a resident of North Carolina, but performed no further acts under the Agreement. *See Tutterrow v, Leach*, 421 S.E.2d 816, 820 (N.C. Ct. App. 1992) (finding that "the mere act . . . of entering into a contract with a resident of a forum state will not provide sufficient minimum

contacts with that forum.")  In *Tutterrow*, the North Carolina Court of Appeals noted that "the contract was governed by the law of another state; there was no provision in the contract requiring defendant to perform services in North Carolina; [and] any services performed were performed outside North Carolina[.]"  *Id.* at 820.  The court also emphasized that the defendants had not traveled to North Carolina.  The same factors apply here, and Mr. Brine's sparse visits to North Carolina cannot change that fundamental calculus.  The contacts between the individual defendants and North Carolina are "insufficient to fulfill the necessary due process requirements."  *Id*. at 820.  *See also Wright v. Zacky Sons Poultry, LLC*, 105 F. Supp. 3d 531, 538 (M.D.N.C. 2015).

Accordingly, Plaintiffs' Complaint should be dismissed as to Mr. Brine and Mr. Whittaker for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### B.  Rapid EPS

Rapid EPS has not purposefully availed itself of the privilege of conducting activities in North Carolina, and the Plaintiffs' claims do not arise out of any activities on the part of Rapid EPS that are directed at North Carolina.  The fact that Mr. Plant resides in North Carolina is a mere happenstance, as none of his activities on behalf of Rapid EPS were oriented towards business in the state.  (Brine Decl. at ¶¶5, 8).  Rapid EPS did not ship merchandise to North Carolina, target or sell to customers in North Carolina, or hold meetings in North Carolina.  (Brine Decl. at ¶¶5, 8).  Instead, its target markets in the United States were in Texas, Florida, Rhode Island, and Atlanta, Georgia.  (Brine Decl. at ¶5).  The sole connection between Rapid EPS and North Carolina is that Mr. Plant chose to live in Charlotte; but Mr. Plant could have performed his work for Rapid EPS from anywhere in the United States, and his location would not have altered the activities and operations of Rapid EPS at all.  (Brine Decl. at ¶8).  Similarly, Mr. Plant's work itself had no impact on the State of North Carolina, except insofar as he lived and paid taxes in Charlotte.

"The mere act . . . of entering into a contract with a resident of a forum state will not provide sufficient minimum contacts" to anchor jurisdiction in North Carolina. *Tutterrow*, 421 S.E.2d at 820. Yet that is the only connection between Rapid EPS and North Carolina. As in *Tutterrow*, "[a]ll acts to be performed under the contract were to occur outside North Carolina" and "any services actually rendered [pursuant to the contract] . . . were discharged outside North Carolina." *Wilmar Racing, Inc. v. Stewart*, 541 S.W.2d 733, 737 (N.C. Ct. App. 2001) (citing *Tutterrow*, 421 S.E. 2d at 820). "To exercise personal jurisdiction over these non-residents" in such circumstances "would violate due process of law." *Wilmar Racing*, 541 S.W. 2d at 737. Federal precedent supports the same conclusion. For example, in *Wright v. Zacky Sons Poultry, LLC*, 105 F. Supp. at 538-40, a plaintiff sought jurisdiction based upon a contract between a California company and its North Carolina-based employee. The district court evaluated the factors promulgated by the Fourth Circuit Court of Appeals for holistically assessing "purposeful availment" of the forum:

> (1) "whether the defendant maintains offices or agents in the forum state"; (2) "whether the defendant owns property in the forum state"; (3) "whether the defendant reached into the forum state to solicit or initiate business"; (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (5) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"; (7) "the nature, quality and extent of the parties' communications about the business being transacted"; and (8) "whether the performance of contractual duties was to occur within the forum."

*Wright*, 105 F. Supp. at 538 (quoting *Consulting Engineers Corp.*, 561 F.3d at 278). The district court concluded that these factors "militat[ed] against" jurisdiction over the defendant because while the California business "contacted Wright about employment while he resided in North Carolina and negotiated the terms of employment while [he] resided in the state," it "maintained no consistent contact with North Carolina . . . has no offices in North Carolina . . . is not registered to do business in North Carolina, ships no goods to North Carolina, holds no bank accounts in

North Carolina, [and] conducted no business operations in North Carolina." *Wright*, 105 F. Supp. at 538-40. While the plaintiff "performed duties under his contract in North Carolina, neither [the California business] nor the contract required him *to be in North Carolina* while performing those duties." *Id.* at 540 (emphasis in original). The district court found that in light of these facts, brief interactions with the employee while he was in North Carolina were not sufficient to show purposeful availment or create a substantial connection with the state. *Id.* at 539.

These same factors militate heavily against personal jurisdiction over Rapid EPS in this case. As in *Wright*, no "performance of contractual duties" was to occur in North Carolina; North Carolina law does not govern the disputes arising from the parties' business relationship; Rapid EPS did not "deliberately engag[e] in significant or long-term business activities" in North Carolina, or solicit business there; and Rapid EPS neither maintains offices nor owns property in North Carolina. *Id.* at 538-40. As in *Wright*, the plaintiff "performed duties under his contract in North Carolina, [but] neither [Rapid EPS] nor the contract required him *to be in North Carolina* while performing those duties." *Id.* at 540 (emphasis in original). The only distinction between Wright and the instant case is that a Rapid EPS employee did visit Mr. Plant in North Carolina — three times in eight years — rather than solely conducting business electronically. (Brine Decl. at ¶6). But most business between the parties was conducted in the United Kingdom or remotely. (Brine Decl. at ¶6). In light of the many factors strongly militating against jurisdiction here, and the broad nature of the jurisdictional inquiry, those few visits cannot change the fundamental calculus. Rapid EPS has not purposefully availed itself of the privilege of conducting activities in North Carolina, and the plaintiff's claims do not arise out of any activities directed at North Carolina. Mr. Plant's presence in Mecklenburg County is a mere happenstance, irrelevant to the business relationship between the parties. (Brine Decl. at ¶¶5, 8). That sort of coincidence cannot

sustain personal jurisdiction in a forum state.  *See Wright*, 105 F. Supp. At 538-40; *Tutterrow*, 421 S.E.2d at 820.  *See also J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (finding that mere happenstance that machine reached New Jersey in the stream of commerce did not confer personal jurisdiction over British manufacturer upon New Jersey courts, where there was no deliberate effort to market to New Jersey).

Even if this Court determined that Rapid EPS availed itself of the privilege of doing business in North Carolina, the third prong of the personal jurisdiction test—that the exercise of jurisdiction be constitutionally reasonable—would prevent jurisdiction over Rapid EPS. Assessing reasonableness, a court should consider: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies."  *Consulting Engineers Corp.*, 561 F.3d at 279.

Even assuming that Rapid EPS had minimum contacts with North Carolina such that it could be said to have "purposefully availed itself of the privilege of conducting activities in the State," a weighing of the Fourth Circuit's "constitutionally reasonable" factors counsels against a finding of jurisdiction.  First, litigating this matter in North Carolina will be burdensome for Defendants, two foreign citizens and a foreign company.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026 (1987).  Second, while Plaintiffs and the State of North Carolina may have an interest in the exercise of jurisdiction here, those interests are outweighed by the heavy burden Defendants would face in litigating this dispute

in North Carolina. Plaintiffs' decision to enter into the Agreement with Defendants requiring Plaintiffs' lawsuit to be litigated in England substantially diminishes Plaintiffs' and this State's interests. Moreover, the Agreement (at Section 25) dictates that the laws of England and Wales govern any dispute concerning the subject matter of the Agreement. (ECF No. 1-2 at 34, Ex. A to Complaint, § 25). Therefore, this Court would be charged with applying the laws of England and Wales, which hardly furthers the "efficient resolution of disputes." *See Foster v. Arletty 3 S.A.R.L.*, 278 F.3d 409, 415-16 (4th Cir. 2002).

Finally, the United States Supreme Court has admonished federal courts to consider both the efficient judicial resolution of disputes and the procedural and substantive policies of other nations in considering the assertion of jurisdiction over a foreign entity. The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. But in every case, those interests, as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the Plaintiffs or the forum State. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Ind. Co.*, 480 U.S. at 115 (quoting *United States v. First National City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528 (1965) (Harlan, J., dissenting)) (emphasis added).

Accordingly, Plaintiffs' Complaint should also be dismissed as to Rapid EPS for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## CONCLUSION

By filing suit in North Carolina, Plaintiffs are asserting that the Agreement is valid and enforceable, but the forum selection clause contained in the Agreement is not. In other words, Plaintiffs are suing Defendants for the breach of the Agreement while, at the same time, asking the court to ignore a portion of the Agreement by which they do not wish to abide: the forum selection clause. The Court should decline Plaintiffs' invitation. The Agreement and the facts surrounding it also fail to provide an adequate anchor for personal jurisdiction over any Defendant in the state or federal courts of North Carolina.

For the reasons set forth above, Defendants respectfully request that the Court enforce the forum-selection clause contained in the Agreement and grant Defendants' Motion to Dismiss. In the alternative, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By: */s/Craig M. Warner*_____
    Craig M. Warner
    North Carolina Bar No. 32983
    Attorney for Defendants Rapid EPS Limited,
    David Brine, & Michael H. Whittaker
    North Carolina Bar No. 32983
    2323 Ross Avenue, Suite 1900
    Dallas, Texas 75201-2720
    Telephone: (214) 740-1400
    Telecopy: (214) 740-5743
    cwarner@bellnunnally.com

    **ATTORNEY FOR DEFENDANTS
    RAPID EPS LIMITED, DAVID BRINE, &
    MICHAEL H. WHITTAKER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served by delivering the same to the person listed below in the manner and on the date indicated.

Harrison A. Lord                                      **VIA ELECTRONIC CASE FILING**
HAL@askLEGALNC.com                        **(ECF) and E-MAIL**
Kevin G. Sweat
KGS@askLEGALNC.com
Lord Law Firm, PLLC
1057 E. Morehead St., Suite 120
Charlotte, NC 28204

**DATED** this the 29th day of October, 2018.


/s/ *Craig M. Warner*____
Craig M. Warner